IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:15-CV-00001-D

| | |
|---|---|
| **Lena Mae Tremble,** | |
| Plaintiff, | |
| v. | **Memorandum & Recommendation** |
| **Carolyn Colvin**, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Lena Mae Tremble instituted this action on March 12, 2015, to challenge the denial of her application for social security income. Tremble claims that Administrative Law Judge Larry A. Miller erred in his determination by failing to properly consider her anxiety and her arthritis and that he erred in finding she could perform the mental demands of light work. She also contends that ALJ Miller improperly assessed her credibility and failed to consider another disability determination. Both Tremble and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 20, 21.

After reviewing the parties' arguments, the court has determined that ALJ Miller reached the appropriate decision. There is substantial evidence to support ALJ Miller's consideration of Tremble's impairments, her credibility and the disability determination of another agency. Further, substantial evidence supports ALJ Miller's finding that Tremble could perform light work. Therefore the undersigned magistrate judge recommends[1] that Tremble's Motion for

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

Judgment on the Pleadings be denied, that Colvin's Motion for Judgment on the Pleadings be granted, and that and that the Commissioner's final decision be affirmed.

## I. Background

On September 19, 2011, Tremble filed an application for disability benefits on the basis of a disability that allegedly began on August 30, 2011. After her claim was denied at both the initial stage and upon reconsideration, Tremble appeared before ALJ Miller for a hearing to determine whether she was entitled to benefits. After the hearing, ALJ Miller determined that Tremble was not entitled to benefits because he was not disabled.  Tr. at 16–25.

ALJ Miller found that Tremble had the following severe impairments: arthritis, fibromyalgia, headaches, and a mood disorder. *Id.* at 18. ALJ Miller also found that her impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 19. ALJ Miller determined that Tremble had the RFC to perform light work, with postural, manipulative, and mental restrictions. *Id.* at 20. The limitations included: Tremble can reach overhead frequently but not constantly; she can frequently stoop, crouch, kneel, and crawl; and she has a decrease in the ability to concentrate on and attend to work tasks to the extent that she can only do simple, routine, repetitive tasks (i.e. can apply common-sense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations). *Id.* ALJ Miller also concluded that Tremble was able to perform her past work as a cottage cleaner. *Id.* at 24.  Thus, ALJ Miller found that Tremble was not disabled. *Id.* at 25

After unsuccessfully seeking review by the Appeals Council, Tremble commenced this action pursuant to 42 U.S.C. § 405(g) on March 12, 2015. D.E. 8.

## II.    Analysis

### A.    Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B.    Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing

whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

ALJ Miller thoroughly summarized Tremble's medical history. She has a history of chronic pain. Tr. 18–24. In April 2011, Dr. F. Paul Old noted normal exam findings except from osteoarthritis in her hands. *Id.* at 282. He recommended she continue regular activity. *Id.* Although she had a positive rheumatoid factor, Dr. Old considered it a false positive and that osteoarthritis, not rheumatoid arthritis, was the more likely diagnosis. *Id.* at 281. In June 2011, Tremble saw Dr. Witold Turkiewicz for her generalized pain. *Id.* at 293. Dr. Turkiewicz noted signs of osteoarthritis in her hand and knee joints. *Id.* at 294. Imaging studies performed that month showed: normal right shoulder, osteopenic bones in both hands, mild diffuse osteopenia in right knee and pelvis, diffuse osteopenia in the left foot, and minimal spurring of the acromioclavicular joint of the left shoulder. *Id.* at 303–09.

Dr. Maqsood Ahmed examined Tremble on March 22, 2012. *Id.* at 312–15. Examination findings were generally normal, except she had trouble fully extending her arms above her head and experienced bilateral shoulder pain with range of motion. *Id.* at 314–15. Dr. Ahmed considered Tremble's primary problems to be rheumatoid arthritis and fibromyalgia and encouraged her to exercise. *Id.* at 315. Imaging studies performed that month showed normal cervical spine, moderate degenerative changes in the lumbosacral spine, a normal left hand, and an old injury on her right hand. *Id.* at 368–70.

Tremble saw Dr. Alan Noble at the VA Medical Center on April 3, 2012. *Id.* at 337. After reviewing records from an outside rheumatologist, who reported insufficient evidence to show

any chronic inflammatory or connective tissue disease, Dr. Noble opined that there was no definitive diagnosis. *Id.* at 338. Clinical psychologist Carolyn Turnage examined Tremble later that month. She assessed mood disorder due to rheumatoid arthritis and assigned a Global Assessment of Functioning ("GAF") score of 50. *Id.* at 461.

In June 2012, Dr. Jack Drummond reviewed Tremble's medical records and opined that she could lift and carry 20 pounds occasionally and 10 pounds frequently and could sit, stand, or walk six hours in an eight hour workday. *Id.* at 85. He also determined that she could reach overhead frequently but not constantly. *Id.* A psychological evaluation by Dr. Richard Bing later that month noted that Tremble could walk without difficulty. *Id.* at 378–81. He assessed amnestic disorder, not otherwise specified, and assigned a GAF score of 57. *Id.* at 380–81. Dr. Bing found that Tremble could understand, retain, and follow instructions; that she had intact reasoning and judgment; and that she had good interpersonal skills. *Id.* Dr. Steven Salmony reviewed Tremble's medical records in July 2012 and opined that she had mild restrictions in both activities of daily living and in social functioning and that she had moderate limitations in maintaining concentration, persistence, and pace. *Id.* at 83.

Dr. Mizuki Mikiso examined Tremble at the VA Medical Center on July 13, 2012. He noted intact sensation, full strength, negative straight leg raises, and no joint swelling or tenderness in her hands. *Id.* at 401. He diagnosed chronic diffuse myalgias and arthralgias consistent with fibromyalgia but concluded there was no evidence of rheumatoid arthritis. *Id.* Tremble returned to Dr. Mikiso in August 2012, at which time he assessed mood disorder and assigned a GAF of 65. *Id.* at 540, 543. Records from the VA indicate that Tremble had a service-related disability of 30 percent, consisting of a 20 percent disability rating for rheumatoid arthritis and a 10 percent rating for tinnitus. *Id.* at 540.

Tremble saw Dr. Pricilla Hankins at the VA Medical Center in September 2012. *Id.* at 525–26. Dr. Hankins assessed mood disorder secondary to chronic pain syndrome and fibromyalgia. *Id.* at 528. She assigned a GAF of 45, prescribed mood-stabilizing medication, and recommended therapy. *Id.* Tremble began with an anger management group with Dr. Dana Jackson later that month. *Id.* at 522–23. Tremble made progress with her goals over the next two months, had normal mental status examinations, and was assigned a GAF of 65 in November 2012. *Id.* at 515–16, 518, 617–20.

Tremble saw Dr. Mikiso for a follow-up appointment in March 2013. *Id.* at 600. Examination revealed multiple points of paracervical tenderness and 11 of 18 tender points for fibromyalgia. *Id.* at 601. Dr. Mikiso found no evidence of rheumatoid arthritis. *Id.* He adjusted her medication and recommended that she walk and do yoga. *Id.* at 602. A few days later, imaging studies of her feet showed mild right hallux valgus and osteopenia. *Id.* at 564.

Dr. Victoria DeFilippo saw Tremble at the VA Medical Center on June 3, 2013. Tremble had a normal mental status exam and Dr. DeFilippo assigned a GAF of 75. *Id.* at 641–42. In August 2013, Dr. DeFilippo noted Tremble was conversant and maintained good eye contact but seemed to have a hard time focusing. *Id.* at 658. She assigned a GAF of 55 and continued Tremble's medication for mood stabilization. *Id.* at 659.

### D.    Impairment severity

Tremble first contends that ALJ Miller erred at step two by failing to find that her rheumatoid arthritis, tinnitus, cognitive disorder, depression, and anxiety were severe impairments. The Commissioner submits that any error in failing to find these conditions to be severe impairments is harmless inasmuch as ALJ Miller proceeded through the sequential

evaluation process and considered all impairments, both severe and non-severe. The Commissioner's point is well-taken.

Without addressing the severity of these conditions, any error by ALJ Miller in failing to find these impairments severe, without more, does not require remand. The failure to find an alleged impairment severe at step two is not reversible error where the ALJ considers the alleged impairment at subsequent steps of the analysis. *See, e.g., Winston*, 2012 WL 40864448, at *4 (noting that "[a]n ALJ's erroneous failure to find an impairment ... severe at step two of the sequential analysis is harmless error if other impairments are found to be severe and the omitted impairment is considered at subsequent steps."); *Atkinson v. Astrue*, No. 5:10–CV–298–FL, 2011 WL 3664346, at *8 (E.D.N.C. July 20, 2011) (citing *Jones v. Astrue*, No. 5:07–CV–452–FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009)), *adopted by* 2011 WL 3664858 (E.D.N.C. Aug. 18, 2011).

ALJ Miller's decision indicates that he considered these conditions. In his decision, ALJ Miller concluded that the medical evidence ruled out a diagnosis of rheumatoid arthritis and further determined that there was no evidence in the record establishing her tinnitus. *Id.* at 21–24. ALJ Miller also found that while she suffers from anxiety, this condition does not significantly impact tremble's ability to perform basic work activity. *Id.* at 19. ALJ Miller further discussed Tremble's anger, mood swings, depression, and mood disorder (*id.* at 21–23); noted that her GAF scores indicated only mild to moderate impairment of function (*id.* at 23); referenced her diagnosis of amnestic disorder (*id.*); recognized her slight impairment of memory but otherwise normal mental status findings (*id.*); and concluded that she had no mental status abnormalities related to her mood disorder (*id.*). Because she is unable to establish that ALJ Miller erred in finding these conditions to be non-severe impairments, her argument on this issue lacks merit.

### E.    Listing 14.09D

Tremble next contends that ALJ Miller erred in failing to evaluate her impairments under Listing 14.09D (inflammatory arthritis). The Commissioner correctly argues that ALJ Miller did not err in failing to evaluate her impairments under this Listing because there is insufficient evidence in the record to establish that she meets or equals the criteria contained therein.

The "Listing of Impairments" details impairments that are "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairments meet all the criteria of a particular listing, 20 C.F.R. § 416.925(c)(3), or are medically equivalent to a listing, *Id.* § 416.926, this alone establishes that the claimant is disabled. *Id.* § 416.920(d). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard [for disability more generally]. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990), *superseded by statute on other grounds,* 20 C.F.R. § 416.924 (1993).; *see also Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (stating that the listings are designed to weed out only those claimants "whose medical impairments are so severe that it is likely they would be disabled regardless of their vocational background").

The claimant has the burden of demonstrating that his or her impairments meet or medically equal a listed impairment. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *see also Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012). As such, a claimant must present medical findings equal in severity to all the criteria for that listing: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530–31; *see also* 20 C.F.R. § 416.925(c)(3). The regulations provide:

> Can your impairment(s) meet a listing based only on a diagnosis? No. Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing.

20 C.F.R. § 416.925(d); *see also Mecimore v. Astrue*, No. 5:10–CV–64, 2010 WL 7281096, at *5 (W.D.N.C. Dec. 10, 2010) ("Diagnosis of a particular condition or recognition of certain symptoms do not establish disability.").

Here, ALJ Miller considered Tremble's impairments under 1.02A and B and 12.04 but found that her impairments did not meet or equal these Listings. Tr. at 19. Along with the description contained in 14.00D6, Listing 14.09 D provides, in pertinent part:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1.  Limitation of activities of daily living.
>
> 2.  Limitation in maintaining social functioning.
>
> 3.  Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, subpart P, App. I, § 14.09D. Tremble has not identified which of the constitutional signs or symptoms she presents. The record appears to disclose only one: fatigue. D.E 20-1 at 25. Absent additional evidence that Tremble also suffers from fever, malaise, or involuntary weight loss, she is unable to demonstrate that she meets the first criteria: at least two constitutional symptoms.

Additionally, Tremble is unable to satisfy the second criteria of Listing 14.09D by showing a marked limitation in activities of daily living; social functioning; or concentration, persistence, and pace. ALJ Miller found that she had only mild limitations in performing activities of daily living and in social functioning, and that she was moderately impaired in her

ability to maintain concentration, persistence, and pace. Tr. at 19. Given that Tremble has not identified evidence in the record supporting her argument that her impairments satisfy Listing 14.09D, ALJ Miller did not err in failing to consider this Listing. Accordingly, Tremble's argument on this issue lacks merit.

## F. Residual Functional Capacity

Tremble's next argument asserts that ALJ Miller's finding that she can perform a reduced range of light work is unsupported by the record. The Commissioner maintains that there is substantial evidence to support a conclusion that Tremble is capable of both the physical demand and mental demands of light work with limitations. The court finds that substantial evidence supports ALJ Miller's RFC determination.

An individual's RFC is defined as the capacity which an individual possesses despite the limitations caused by his or her physical or mental impairments. 20 C.F.R. § 416.945(a)(1); *see also* SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); *see also* S.S.R. 96–8p, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). An ALJ sufficiently considers the combined effects of a claimant's impairments when each impairment is separately discussed and the ALJ also discusses the claimant's complaints and activities. *See Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005).

The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96–8p, 1996 WL 374184, at *7.

Tremble argues that her RFC should be less than sedentary given her limited physical exertional capabilities. At the hearing, she testified that she could walk for 15 minutes, stand for 10 minutes, and sit for 15 minutes. Tr. at 49–50. Tremble also contends that she cannot meet the mental demands of light, unskilled work because she has cognitive difficulties, memory loss, amnestic disorder, and does not get along well with coworkers. She further contends that her testimony is credible because of her documented chronic pain.

ALJ Miller concluded that Tremble's statements were not fully credible. *Id.* at 23. As such, these limitation were not required to be incorporated into the RFC. Additionally, there is substantial evidence supporting his finding that Tremble is capable of a reduced range of light work. State agency medical consultant Dr. Drummond opined that Tremble could perform the demands of light, unskilled work. *Id.* at 24. Other state agency consultants, Drs. Salmony and Hurley Knott, made similar findings. *Id.* ALJ Miller gave significant weight to these opinions. *Id.*

Additionally, the medical evidence demonstrated that several providers recommended that Tremble engage in exercise programs including walking and yoga, suggesting that her physical activities were not as restricted as she alleged (*id.* at 282, 315, 553, 602); a diagnosis of rheumatoid arthritis was ruled out as testing did not indicate an inflammatory or autoimmune process (*id.* at 647); and there was no evidence of a diagnosis or testing for tinnitus aside from the VA disability rating (*id.* at 621). Thus, the record as a whole supports ALJ Miller's finding that Tremble is capable of the exertional demands associated with a reduced range of light work.

With respect to tremble non-exertional limitations, ALJ Miller addressed Tremble's mental limitations by finding that she had a decrease in the ability to concentrate and attend to work tasks to the extent she could only perform simple, routine, repetitive tasks. *Id.* at 20**.** He explained this limitation by stating that Tremble could apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations. *Id.* This finding is supported by Dr. Richard Bing's opinion, which ALJ Miller afforded great weight, finding that Tremble could perform the cognitive demands of unskilled work. *Id.* at 24. ALJ Miller's mental RFC determination is also supported by other evidence including: Dr. Salmony's assessment that Tremble had mild difficulties in maintaining social functioning and moderate difficulties in concentration, persistence, and pace (*id.* at 83); Dr. DeFilippo's records that note Tremble had some trouble focusing but that she had normal speech and organized thoughts (*id.* at 658–59); GAF scores of 57 in June 2012, 65 in November 2012, and 75 in June 2013, indicative of only moderate impairment to no more than slight impairment (*id.* at 381, 514–16, 518, 523, 543, 617–19); and numerous mental status examinations which had normal findings (*id.* at 514, 516–17, 523, 542, 617–20, 641).

In sum, there is substantial evidence to support ALJ Miller's finding that Tremble was not as limited as she alleged and that she was capable of a reduced range of light work. Accordingly, her argument on this issue should be rejected.

## G.    Credibility

Tremble's next assertion is that ALJ Miller erred in assessing her credibility, arguing that her medical history documents her pain allegations. She contends ALJ Miller erred in rejecting

her statements concerning her symptoms and resulting limitations. The Commissioner asserts that ALJ Miller properly evaluated Tremble's credibility.

At 20 C.F.R. § 404.1529(a), the Social Security Regulations provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig v. Chater,* 76 F.3d 585, 593 (4th Cir. 1996). Under the Regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96–7p, 1996 WL 374186, at *2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Craig,* 76 F.3d. at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R.96–7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *Craig,* 76 F.3d. at 595–96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96–7p, 1996 WL 374186, at *2.

Here, ALJ Miller noted Tremble's statements regarding her impairments but found that they were not fully credible. Tr. at 23. He then went on to point out that the medical evidence of record did not support her allegations. He noted, for instance, that Tremble had no signs of joint inflammation or deformity, had no limitation of motion or focal neurological abnormalities, that her use of a cane was not medically necessary, and that she had trigger point tenderness but no associated persistent joint or soft tissue inflammation. *Id.*

Although Tremble cites GAF scores of 45 and 50 to support her contention that she was she had serious limitations in functioning, she also had GAF scores of 55, 65, and 75, indicative of slight to moderate limitation. The SSA has stated that GAF scores "[do] not have a direct correlation to the severity requirements in [the social security] mental disorders listings." *Wiggins v. Astrue*, No. 5:11–CV–85–FL, 2012 WL 1016096, at *8 (E.D.N.C. Feb. 2, 2012) (quotations and citations omitted) (memorandum and recommendation holding that the ALJ properly evaluated a claimant's bipolar disorder and mental retardation, even though he did not explicitly mention each individual GAF score in the record), *adopted by* 2012 WL 1016055 (E.D.N.C. Mar. 22, 2012). Moreover, GAF scores themselves are not necessarily indicative of a claimant's mental disability. *See Oliver v. Comm'r.*, 415 F. App'x 681, 684 (6th Cir. 2011) ("A GAF score is thus not dispositive of anything in and of itself" and has no direct legal or medical correlation to the severity requirements of social security regulations.); *White v. Comm'r.*, 572 F.3d 272, 276 (6th Cir. 2009) (a GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning."); *Leovao v. Astrue*, No. 2:11–cv–54, 2012 WL 6189326, at *5 (W.D.N.C. Nov. 14, 2012) (a GAF score is intended to be used to make treatment decisions) (citing *Wilkins v. Barnhart*, 69 F. App'x. 775, 780 (7th Cir. 2003)); *Fowler v. Astrue*, No, 1:10–cv–273, 2011 WL 5974279, at *3 (W.D.N.C. Nov. 29, 2011)

(a GAF score is only a "snapshot of functioning at any given moment."); *Melgarejo v. Astrue*, No. 08–3140, 2009 WL 5030706, at * 2 (D. Md. Dec. 15, 2009) ("[A] GAF score is not determinative of whether a person is disabled ... [and][t]he Social Security Administration does not endorse the use of the GAF in Social Security and SSI disability programs, and it does not directly correlate to the severity requirements in the mental disorders listings.").

In this case, ALJ Miller gave Tremble's GAF scores only some weight. Tr. at 24. Inasmuch as the scores cited by Tremble have no direct correlation to the severity of her mental conditions, ALJ Miller did not err by failing to give her lowest GAF scores more weight.

Tremble also contends that Drs. Drummond and Salmony both found her allegations to be credible in that her medically determinable impairments could be expected to produce the limitations alleged. *Id.* at 83, 86. ALJ Miller also concluded that tremble's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Id. at 23. However, this is one the first step of the credibility determination. As stated above, ALJ Miller also found that Tremble's statements were not fully credible because of other, inconsistent findings in the record.

Tremble has not identified evidence that ALJ Miller failed to consider. Where, as here, an ALJ's credibility findings which are supported by specific reasons, the court is required to defer to those determinations. *See Edelco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) ("When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'") (internal citations omitted). Inasmuch as Tremble has failed to demonstrate any error in ALJ Miller's credibility assessment, she is not entitled to relief on this issue.

### H.     Step Five

Tremble also argues that ALJ Miller erred at step five by failing to ask the Vocational Expert ("VE") hypothetical questions that addressed the erosion of the occupational base and which incorporated all of her exertional and non-exertional impairments. She maintains that ALJ Miller failed to include her inabilities to sit, stand, or walk for more than a few minutes and that she testified she must lie down to relieve her chronic pain. The Commissioner correctly submits ALJ Miller was not required to ask the VE hypothetical questions at step five inasmuch as he concluded that Tremble was capable of her past work at step four.

Tremble's argument on this issue is premised on her previous assertion that there was not substantial evidence to support the RFC finding for a reduced range of light work. As noted above, Tremble's statements of her limited abilities to sit, stand, and walk and her need to lie down for several hours every day were unsupported and thus not credited. Accordingly, ALJ Miller found that Tremble's testimony was not fully credible. *Id.* at 23. Because the court concludes that substantial evidence supports the RFC determination, Tremble's argument on this issue lacks merit.

Additionally, a review of the hearing transcript reveals that ALJ Miller asked the VE about the demands of Tremble's previous work, including her job as a cottage cleaner. *Id.* at 58–60. The VE testified that this work was light and unskilled and would require frequent reaching. Id. at 59–60. ALJ Miller concluded that this position did not require work-related activities precluded by Tremble's RFC. *Id.* at 24. Tremble has not established that she is unable to perform this work. *See Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (plaintiff has the burden of showing that he can no longer perform his former work because of his impairments). When an ALJ finds that a claimant is capable of performing her past relevant work at step four, the

claimant is found not disabled and the sequential evaluation process ends. *See* 20 C.F.R. §404.1520(a)

Moreover, a finding that Tremble is not disabled at step four precludes the requirement of a step five analysis. *Mastro v. Apfel*, 270 F.3d 171, 179–180 (4th Cir. 2001); *Moore v. Colvin*, No. 1:14-cv-381, 2015 WL 4879267, at *6 (M.D.N.C. Aug. 14, 2015). Consequently, the disability determination ended at step four and ALJ Miller's was not required to proceed to step five and ask the VE to identify other jobs in the national economy compatible with Tremble's age, education, work experience, and RFC. For this additional reason, Tremble's step five argument is subject to dismissal.

## I.    VA disability determination

Next, Tremble asserts that ALJ Miller erred in failing to afford substantial weight to her 30 percent disability rating by the Veterans' Administration, citing *Bird v. Commissioner,* 699 F.3d 337 (4th Cir. 2012). The Commissioner maintains that *Bird* is not relevant where, as here, the records underlying the VA determination are not part of the record. She further contends that the VA finding is not entitled to substantial weight inasmuch as ALJ Miller explained his reasons for affording it less weight.

As provided at 20 C.F.R. § 404.1504 and further explained in Social Security Ruling ("S.S.R.") 06–03p, "a determination made by another agency that [the claimant is] disabled or blind is not binding on" the Social Security Administration. 20 C.F.R. § 404.1504. Rather, "the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner." S.S.R. 06–03p. However, the Court of Appeals for the Fourth Circuit issued a decision in *Bird* which addressed the value of disability findings by other agencies. *Bird*, 699 F.3d 337. The Fourth Circuit noted that while another agency's disability

determination is not binding on the SSA, "another agency's disability determination 'cannot be ignored and must be considered.'" *Bird*, 699 F.3d at 343. In considering the weight to give a decision of the Veterans Administration ("VA") in particular, the Fourth Circuit held:

> The assignment of at least some weight to a VA disability determination reflects the fact that both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability. Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims.

*Bird*, 699 F.3d at 343 (internal quotations omitted). The Fourth Circuit therefore concluded that "in making a disability determination, the SSA must give substantial weight to a VA disability rating," and "an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.* Remand is appropriate when an ALJ fails to adhere to *Bird's* directive to give substantial weight to a VA disability rating decision unless the record demonstrates that lesser weight is warranted. *Williams v. Colvin*, No. 5:13–CV–571–FL, 2015 WL 73954, at *3 (E.D.N.C. Jan. 6, 2015)

Here, the VA found that Tremble was 20 percent disabled due to rheumatoid arthritis and 10 percent disabled due to tinnitus. Tr. at 621. ALJ Miller gave the VA disability rating little weight, noting that "the diagnosis of rheumatoid arthritis was subsequently ruled out" and that "there is no documentation regarding tinnitus." *Id.* at 24. Given these reasons, ALJ Miller clearly demonstrated why the VA rating less warranted than substantial weight and thus complied with the requirements of *Bird*. Accordingly, *Bird* does not require remand.

Additionally, as the Commissioner points out, the records upon which the VA based its disability determination are not part of the record. While various treatment records from the VA are contained in the SSA's Administrative Record, which make passing reference to Tremble's

numerical disability rating, they do not contain the VA's decision explaining the rationale behind her award of benefits. It appears that those VA records contained in the SSA Administrative Record are not the same records underlying the VA's disability rating decision, as the records reference that rheumatoid arthritis has been ruled out, (*id.* at 401, 602, 647), and make no reference to tinnitus. Such circumstances present no issue under *Bird. Rodgers v. Colvin*, No. 5:13-cv-345-D, 2015 WL 636061, at *8 (E.D.N.C. Feb. 13, 2015). For this additional reason, remand is not warranted  require in light of the *Bird* decision. Consequently, Tremble's argument lacks merit.

## III. Conclusion

For the forgoing reasons, the court recommends that Tremble's Motion for Judgment on the Pleadings (D.E. 20) be denied, that Colvin's Motion for Judgment on the Pleadings (D.E. 21) be granted, and that the Commissioner's final decision should be affirmed.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel.  Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Owen v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Dated: January 20, 2016..

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE